UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MANUEL FELIPE GOMEZ-GOMEZ, | ) |
| Petitioner, | ) |
| v. | ) No. 2:25-cv-00606-JRS-MJD |
| BRISON SWEARINGEN, SAMUEL OLSON, KRISTI NOEM, PAM BONDI, | ) |
| Respondents. | ) |

**ORDER GRANTING PETITION FOR HABEAS CORPUS
AND DIRECTING FURTHER PROCEEDINGS**

Petitioner Manuel Felipe Gomez-Gomez is a noncitizen who entered the United States without inspection in 2022. Dkt. 1 at 3. Immigration and Customs Enforcement ("ICE") agents arrested Mr. Gomez-Gomez in Illinois on October 30, 2025. *Id*. He now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody. *Id*. at 6.

For the reasons explained below, the Court **grants** the petition to the extent that **within seven days of this Order, Respondents must either**: (1) afford Mr. Gomez-Gomez an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a); or (2) release him from custody, under reasonable conditions of supervision.

I.   Background

Mr. Gomez-Gomez entered the United States without inspection on July 6, 2022. Dkt. 1 at 3. On November 17, 2022, Mr. Gomez-Gomez appeared before an immigration court but was not detained. *Id*. On July 6, 2023, Mr. Gomez-Gomez received a Notice to Appear before the immigration court on October 29, 2025. Dkt. 24-1 at 6. On October 30, 2025, Mr. Gomez-Gomez

1

appeared for a check-in with ICE officials and was arrested pursuant to warrant. *Id*. at 2. On November 17, 2025, Mr. Gomez-Gomez appeared in immigration court for a preliminary hearing and was informed that bond would not be considered. Dkt. 2 at 2.

The Notice to Appear charges him with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1182(a)(6)(A)(i)] as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General"] and § 212(a)(7)(A)(i)(I) [8 U.S.C. § 1182(a)(7)(A)(i)(I) as alien "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title."] Dkt. 24-1 at 9. The "arriving alien" checkbox is unmarked. *Id*. at 6.

Mr. Gomez-Gomez was subsequently transferred to Clay County Jail in Brazil, Indiana, where he remains detained. Dkt. 2 at 3; *see also*, U.S. Immigration and Customs Enforcement, "Online Detainee Locator System," https://locator.ice.gov/odls/#/search (search reflecting that Mr. Gomez-Gomez is still housed at the Clay County Detention Center as of December 29, 2025).

On November 20, 2025, Mr. Gomez-Gomez filed this writ of habeas corpus petition in the Northern District of Illinois, which petition was subsequently transferred to this Court on December 4, arguing that Respondents are unlawfully detaining him under 8 U.S.C. § 1225(b)(2)(A) in violation of 8 U.S.C. § 1231(a)(6), the Administrative Procedure Act, and the Fifth Amendment of the U.S. Constitution. Dkt. 2 at 4-5. He argues that his removal is not reasonably foreseeable and that his detention without opportunity for bond is contrary to law and the Constitution. *Id*.; dkt. 28 at 2.

Mr. Gomez-Gomez was scheduled to appear before an immigration judge on January 5, 2026. Dkt. 24 at 3.

## II.     Discussion

Mr. Gomez-Gomez raises claims for relief under the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment of the United States Constitution. Dkt. 2 at 4-5. He requests immediate release due to his unlawful arrest. *Id.* at 6.

Respondents argue that Mr. Gomez-Gomez's petition is premature because he has not sought relief before an immigration judge or the Board of Immigration Appeals ("BIA"). Dkt. 24. And even if the Court finds exhaustion is not required, Respondents contend that Mr. Gomez-Gomez is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2). *Id.*

### A.     Exhaustion

Respondents argue that the instant petition is premature because Mr. Gomez-Gomez has not exhausted all available administrative remedies. Mr. Gomez-Gomez argues that he was informed at his preliminary hearing on November 17 that bond would not be considered. Dkt. 2 at 2. Any attempt to exhaust his administrative remedies, therefore, would be futile because an immigration judge would deny his request for a bond hearing under the BIA decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which held that immigration judges do not have the authority to hold a bond hearing where the moving noncitizen entered the country without inspection. Instead, such individuals are subject to mandatory detention under § 1225. In short, because Mr. Gomez-Gomez entered the country without inspection, if he were to move for a bond

3

hearing, an immigration judge would be required to decline jurisdiction over the issue and not conduct a bond hearing.

There is no statutory requirement that Petitioner move for a bond hearing before an immigration judge before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the petitioner was not required to exhaust administrative remedies by seeking a bond hearing before an immigration judge because doing so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Mr. Gomez-Gomez was not required to exhaust administrative remedies because doing so would be futile.

### B. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which

4

involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States ....
> [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged

5

in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### C. Mr. Gomez-Gomez Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

The record reflects that Mr. Gomez-Gomez is eligible for a bond hearing under § 1226(a).

Respondents argue that Mr. Gomez-Gomez is subject to the broader "catchall provision" in § 1225(b)(2) because he is an "applicant for admission" according to § 1225(a)(1), who is not covered by the narrower provisions for "arriving aliens" in § 1225(b)(1), and who is "not clearly and beyond doubt entitled to be admitted." Dkt. 24 at 5-7.

The Court has found persuasive the reasoning of other courts that previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Mr. Gomez-Gomez who have lived in the interior of the United States for years. *See Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *Mendoza-Loera v. Warden, Clay Co. Jail*, 2:25-cv-00554-JPH-MJD, dkt. 16 at 8−11 (S.D. Ind. Nov. 21, 2025); *see*

6

*also Casta*ñ*on-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *8-*10 (7th Cir. Dec. 11, 2025) (stating that "Plaintiffs have the better argument on the current record" referring to argument that "ICE's authority to detain a noncitizen discovered within the country derives from § 1226(a) and not from § 1225(b)."). As has previously been explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *Alejandro*, 2025 WL 2896348, at *14-19. Respondents have cited no binding precedent to the contrary. In *Mendoza-Loera*, 2:25-cv-00554-JPH-MJD, it was found that the few district court decisions adopting the Respondents' interpretation of § 1225 were distinguishable or otherwise unpersuasive.

Here, Respondents indicate that Mr. Gomez-Gomez was arrested pursuant to a warrant, and the record currently before the Court shows that § 1225's mandatory detention provision does not apply to Mr. Gomez-Gomez. The Court concludes that Mr. Gomez-Gomez is entitled to a bond hearing under § 1226, and it declines to reach Mr. Gomez-Gomez' other arguments.

### III.   Scope of Relief

Mr. Gomez-Gomez is entitled to habeas relief because his continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Gomez-Gomez requests immediate release from custody. Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release

7

from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody).

However, the Court finds that it would not be in the interests of justice to order Mr. Gomez-Gomez's immediate release and instead orders Respondents to provide him an individualized bond hearing as required by § 1226(a).

### IV.   Conclusion

The Court **grants** the petition to the extent that **within seven days of this Order, Respondents must either**: (1) provide Mr. Gomez-Gomez with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a); or (2) release him from custody, under reasonable conditions of supervision. No later than **than four days of either action,** Respondents must file a notice with the Court certifying that they have complied with the Court's order. The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date:   12/31/2025

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel of record

8